United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   PEOPLE OF THE STATE OF                No. C 10-03084 CW
     CALIFORNIA, ex rel. KAMALA D.         No. C 10-03270 CW
12   HARRIS, ATTORNEY GENERAL,             No. C 10-03317 CW
                                           No. C 10-04482 CW
13        Plaintiff,
                                           ORDER GRANTING IN
14        v.                               PART AND DENYING
                                           IN PART
15   FEDERAL HOUSING FINANCE AGENCY;       DEFENDANTS'
     EDWARD DeMARCO, in his capacity       MOTIONS TO DISMISS
16   as Acting Director of FEDERAL         (Docket Nos. 49,
     HOUSING FINANCE AGENCY; FEDERAL       41, 74, 18, and
17   HOME LOAN MORTGAGE CORPORATION;       13), AND GRANTING
     CHARLES E. HALDEMAN, Jr., in his      IN PART AND
18   capacity as Chief Executive           DENYING IN PART
     Officer of FEDERAL HOME LOAN          SONOMA COUNTY'S
19   MORTGAGE CORPORATION; FEDERAL         MOTION FOR A
     NATIONAL MORTGAGE ASSOCIATION;        PRELIMINARY
20   and MICHAEL J. WILLIAMS, in his       INJUNCTION (Docket
     capacity as Chief Executive          No. 33)
21   Officer of FEDERAL NATIONAL
     MORTGAGE ASSOCIATION,
22
          Defendants
23
     _____/
24

25

26

27

28

SONOMA COUNTY and PLACER COUNTY,

       Plaintiff and
       Plaintiff-Intervener,

   v.

FEDERAL HOUSING FINANCE AGENCY;
EDWARD DeMARCO, in his capacity
as Acting Director of FEDERAL
HOUSING FINANCE AGENCY; FEDERAL
HOME LOAN MORTGAGE CORPORATION;
CHARLES E. HALDEMAN, Jr., in his
capacity as Chief Executive
Officer of FEDERAL HOME LOAN
MORTGAGE CORPORATION; FEDERAL
NATIONAL MORTGAGE ASSOCIATION;
and MICHAEL J. WILLIAMS, in his
capacity as Chief Executive
Officer of FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

       Defendants.
_____/

SIERRA CLUB,

       Plaintiff,

   v.

FEDERAL HOUSING FINANCE AGENCY;
and EDWARD DeMARCO, in his
capacity as Acting Director of
FEDERAL HOUSING FINANCE AGENCY,

       Defendants.
_____/

CITY OF PALM DESERT,

       Plaintiff,

   v.

FEDERAL HOUSING FINANCE AGENCY;
FEDERAL NATIONAL MORTGAGE
ASSOCIATION; and FEDERAL HOME
LOAN MORTGAGE CORPORATION,

       Defendants.
_____/

California, Sonoma and Placer Counties, the City of Palm Desert and the Sierra Club have sued the Federal Housing Finance Agency (FHFA), the Federal National Housing Association (Fannie Mae), the Federal Loan Mortgage Corporation (Freddie Mac) and their directors.[1]  The lawsuits challenge actions by the FHFA, Fannie Mae and Freddie Mac which have allegedly blocked government programs financing energy conservation.[2]  Plaintiffs seek declaratory and injunctive relief, alleging violations of the Administrative Procedures Act (APA), the National Environmental Policy Act (NEPA), various state laws and the Constitution's Tenth Amendment and Spending Clause.

Defendants have moved to dismiss all claims.[3]  Plaintiffs jointly oppose.  Sonoma County also moves for a preliminary injunction.  Defendants' motions to dismiss are GRANTED IN PART.

---

[1] By stipulation, the claims against Defendants Charles E. Halderman, Jr. and Michael J. Williams, who were sued in their official capacities as Chief Executive Officers for Fannie Mae and Freddie Mac, have been dismissed.  No. C 10-03084, Docket No. 83; No. C 10-03270, Docket No. 93.

[2] Three similar cases have been filed in federal district courts in Florida and New York: The Town of Babylon v. Federal Housing Finance Agency, et al., 2:10-cv-04916 (E.D.N.Y); Natural Resource Defense Council, Inc. v. Federal Housing Finance Authority, et al., 1:10-cv-07647-SAS (S.D.N.Y.); and Leon County v. Federal Housing Finance Agency, et al., 4:10-cv-00436-RH (N.D.Fla.).  The Babylon and Natural Resource Defense Council actions have been dismissed, and notices of appeal have been filed.

[3] Unless noted otherwise, citations to the record refer to the California action, C 10-03084.

Sonoma County's motion for a preliminary injunction is GRANTED IN PART.

BACKGROUND

The present actions arise from disputes about certain federally funded, state and locally administered initiatives known as Property Assessed Clean Energy (PACE) programs. The Department of Energy substantially funds PACE programs, as part of the American Recovery and Reinvestment Act of 2008. Through these programs, state and local governments finance energy conservation improvements with debt obligations secured by the retrofitted properties. As a related benefit, the programs are intended to create jobs.

In the Housing and Economic Recovery Act of 2008 (HERA), Public Law 110-289, 122 Stat. 2654, Congress established the FHFA to regulate and oversee Fannie Mae and Freddie Mac (collectively, the Enterprises), as well as the Federal Home Loan Banks (Banks), which largely control the country's secondary market for residential mortgages. The HERA amended the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, 12 U.S.C. § 4501 et seq. (Safety and Soundness Act). The Safety and Soundness Act outlines the regulatory and oversight structure for the Enterprises and the Banks, denominated the regulated entities. 12 U.S.C. § 4502(20). As amended by the HERA, the Safety and Soundness Act vests in the FHFA the authority to act as a conservator and receiver for the Enterprises and the Banks. 12

4

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

U.S.C. §§ 4511(b); 4617(a).  Since September 6, 2008, both Enterprises have been in FHFA conservatorship.  Id.

The parties disagree about the nature of the debt obligations created by PACE programs, and the extent to which the obligations create risks for secondary mortgage holders, such as the Enterprises.  Defendants contend that PACE programs, in particular those that result in lien obligations that take priority over mortgage loans, make alienation of the encumbered properties more difficult, and thus pose risk to the security interests of entities that purchase the mortgages for investment purposes. Plaintiffs allege that Defendants' actions have thwarted PACE programs.  They claim that (1) Defendants disregarded statutorily imposed procedural requirements in adopting policies about the PACE debt obligations, (2) Defendants' determinations were substantively unlawful because they were arbitrary and capricious, and (3) Defendants mischaracterized the legal nature of the obligations, contrary to state law, deeming them loans rather than traditional public assessments.

The actions Defendants took are as follows.  In a letter dated June 18, 2009, addressed to banking and creditor trade groups, as well as associations for mortgage regulators, governors and state legislators, the FHFA asserted in general terms that the PACE program posed risks to homeowners and lenders.  On September 18, 2009, Fannie Mae issued a "Lender Letter" to its mortgage sellers and servicers in response to questions about PACE

5

programs, providing a link to the FHFA's June 18, 2009 letter. First Amended Complaint (FAC), Ex. A.

On May 5, 2010, Fannie Mae and Freddie Mac both issued letters to their mortgage sellers and servicers, again addressing concerns about PACE programs.  FAC, Ex. B.

On July 6, 2010, the FHFA issued a statement that the PACE programs "present significant safety and soundness concerns that must be addressed by Fannie Mae, Freddie Mac and the Federal Home Loan Banks."  FAC, Ex. C.  The FHFA stated that first liens created by PACE programs were different from "routine tax assessments," and posed significant risks to lenders, servicers, and mortgage securities investors.  Id.  The FHFA "urged state and local governments to reconsider these programs" and called "for a pause in such programs so concerns can be addressed."  Id.  The FHFA directed Fannie Mae, Freddie Mac and the Banks to undertake "prudential actions," including reviewing their collateral policies to assure no adverse impact by PACE programs.  Id.  Although Defendants have taken the position that the FHFA issued the statement in its capacities as conservator and as regulator, the statement itself does not say so, or cite any statutory or regulatory provision.

On August 31, 2010, Fannie Mae and Freddie Mac, citing the FAFA's July 2010 statement, announced to lenders that they would not purchase mortgages originated on or after July 6, 2010, which

were secured by properties encumbered by PACE obligations.

Declaration of Scott Border, Exs. 20 & 21.

At the Court's request, on February 8, 2011, the United States submitted a Statement of Interest in these lawsuits.

On February 28, 2011, the FHFA's General Counsel sent a letter to General Counsel for Fannie Mae and Freddie Mac, reaffirming that debts arising from PACE programs pose significant risks to the Enterprises.  Defendants' Notice of New Authority, Ex. A.  The FHFA invoked its statutory authority as conservator and directed that the "Enterprises shall continue to refrain from purchasing mortgage loans secured by properties with outstanding first-lien PACE obligations."  Id.  In addition, the letter ordered that the "Enterprises shall continue to operate in accordance with the Lender Letters and shall undertake other steps necessary to protect their safe and sound operations from these first-lien PACE programs."  Id.

LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1).  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.

7

Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

DISCUSSION

I. Subject Matter Jurisdiction

A. Article III Standing

Although Defendants did not initially raise the issue, the United States argues in its Statement of Interest that Plaintiffs do not have Article III standing and, therefore, the Court does not have subject matter jurisdiction to consider their claims. "If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). To establish constitutional standing, a plaintiff must satisfy three requirements--(1) injury in fact; (2) causation; and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1998). The party invoking federal jurisdiction bears the burden of establishing that it has Article III standing. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103-104 (1998). On a motion to dismiss, a plaintiff need only show that the facts alleged, if proved, would confer standing. Central Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2002).

The United States does not argue that Plaintiffs do not allege "injury in fact," and the Court finds that they do. Rather, the United States asserts that Plaintiffs cannot satisfy the causation requirement because the Enterprises took the position that PACE debt obligations were incompatible with their uniform security instruments in their May 5, 2010 letters, before the FHFA issued its July 6, 2010 statement. The United States argues that Plaintiffs have alleged no facts suggesting that the Enterprises would have altered their position if the FHFA had not issued its July statement.

With respect to redressability, the United States asserts that it is mere speculation that if the FHFA changed its policy on the PACE program, individuals would be able to obtain mortgages, or refinance existing mortgages, on properties encumbered by PACE-

related debt obligations.  The United States further argues that it is speculative that the notice and comment process would change the FHFA's and the Enterprises' position with respect to PACE programs.

Plaintiffs claim procedural as well as substantive injury. "A showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry, causation and redressability." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1226 (9th Cir. 2008).  The Supreme Court has explained that

> a litigant to whom Congress has accorded a procedural right to protect his concrete interests . . . can assert that right without meeting all the normal standards for redressability and immediacy.  When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant.

Massachusetts v. EPA, 549 U.S. 497, 517-18 (2007) (internal quotation marks and citations omitted).  Where a plaintiff asserts that an agency has failed to follow procedural requirements in considering the environmental impact of its action, for purposes of redressability, "[i]t suffices that . . . the [agency's] decision could be influenced by the environmental considerations that [the relevant statute] requires an agency to study." Citizens for Better Forestry v. USDA, 341 F.3d 961, 976 (9th Cir. 2003) (alterations and emphasis in original, internal quotation marks omitted); Natural Resources Defense Council, Inc. v. EPA,

10

638 F.3d 1183, 1189 n.3 (9th Cir. 2011); Salmon Spawning, 545 F.3d at 1226-27; Sierra Forest Legacy v. United States Forest Service, 652 F. Supp. 2d 1065, 1078 (N.D. Cal. 2009).  In contrast, "a plaintiff alleging a substantive violation must demonstrate that its injury would likely be redressed by a favorable court decision."  Salmon Spawning, 545 F.3d at 1228.

With regard to causation, Plaintiffs have alleged a sufficient connection between Defendants' actions and the thwarting of PACE programs and their anticipated benefits.  To hold otherwise would suggest that Congress imposed procedural requirements that have no meaningful effect.  See Citizens for Better Forestry, 341 F.3d at 973.

Although the FHFA's July 2010 statement was issued after Fannie Mae and Freddie Mac's May 2010 announcements to their sellers and servicers, the FHFA had publicized its concerns in the prior, June 2009, letter.  Fannie Mae, in turn, cited that letter as it raised caution about PACE programs in its September 2009 Lender Letter.  In addition, Fannie Mae's and Freddie Mac's August 31, 2010 announcements that they would not purchase PACE-encumbered mortgages originated on or after July 6, 2010, were issued in response to the FHFA's statement.

Further, Plaintiffs' claims of procedural violations are redressable.  If the statutorily mandated procedures were followed, Plaintiffs' interests could be protected by a resulting change in the FHFA, Fannie Mae and Freddie Mac's policy, spurring

United States District Court
For the Northern District of California

lenders to renew financing of PACE-encumbered properties.
Plaintiffs have alleged that, prior to the July 2010 statement,
PACE programs were operational and PACE participants were able to
refinance their mortgages.  They further allege that, after the
FHFA's July 2010 statement and the Enterprises' announcements, the
programs faltered and participants became unable to refinance or
transfer their properties without paying off the PACE debt in
full.  FAC ¶ 35.  Accepting the allegations as true, the financing
and benefits previously afforded by PACE programs could be renewed
as a result of new information gleaned through the notice and
comment and environmental review processes and a resulting change
in Defendants' position and related marketplace practices.

Although Plaintiffs' substantive claims are subject to
greater scrutiny with regard to Article III standing requirements,
the causation and redressability requirements are adequately
plead.  The alleged reaction of the marketplace to Defendants'
actions and the rapid demise of PACE programs establish a
sufficient causal connection between Defendants' actions and
Plaintiffs' purported injury.  Redressability is sufficiently
alleged because, if the FHFA's policy were set aside as arbitrary
and capricious, it is likely that financing streams would be
renewed.

This case is distinguishable from <u>Levine v. Vilsack</u>, 587 F.3d
986 (9th Cir. 2009), a case upon which the United States relies to
argue that Plaintiffs' claims are not redressable.  In <u>Levine</u>, the

plaintiffs brought suit against the Secretary of Agriculture, alleging that the agency's interpretive rule excluding poultry from the Humane Methods of Slaughter Act (HMSA) was arbitrary and capricious under the APA.  The plaintiffs sought to block the inhumane slaughter of poultry under the HMSA, but the statute lacked an enforcement provision.  Id. at 989.  Plaintiffs' goal would be achieved only if the Secretary proceeded to add poultry to the list of protected species under the Federal Meat Inspection Act, a separate statute which was not at issue in the case.  Id. at 993-95.  The court reasoned that it was speculative whether the Secretary would do so and whether resulting regulations would make the slaughter of poultry more humane.  Id. at 996-97.

The present actions differ because further action by a federal agency would not be required to achieve Plaintiffs' goals. Plaintiffs have alleged that PACE encumbrances were treated like tax assessments until the FHFA took the actions it did. Plaintiffs adequately allege that a change in the FHFA's policy would lead to a return previous marketplace practices.

Accordingly, Plaintiffs' claims sufficiently allege the injury in fact, causation and redressability necessary to establish standing at this stage of the litigation.

B. Statutory Preclusion of Judicial Review

Defendants argue that, pursuant to Federal Rule of Civil Procedure 12(b)(1), the present actions should be dismissed for lack of subject matter jurisdiction.  Specifically, Defendants

13

assert that three statutory provisions--12 U.S.C. §§ 4617(f), 4635(b), and 4623(d)--preclude judicial review of Plaintiffs' claims for relief.

The courts have long recognized a presumption in favor of judicial review of administrative actions.  Love v. Thomas, 858 F.2d 1347, 1356 (9th Cir. 1988) (citing Block v. Community Nutrition Inst., 467 U.S. 340, 349-51 (1984)).  The presumption may be overcome by various means, including "specific language or specific legislative history that is a reliable indicator of congressional intent" or "by inference of intent drawn from the statutory scheme as a whole."  Block, 467 U.S. at 349.

Although "great weight" is ordinarily given to an agency's interpretation of a statute it is charged with enforcing, "that deference does not extend to the question of judicial review, a matter within the peculiar expertise of the courts."  Love, 858 F.2d at 1352 n.9.

The Court considers whether any of the three provisions preclude its authority to hear Plaintiffs' claims.

        1. Section 4617(f)

Section 4617(a) authorizes the appointment of the FHFA as conservator or receiver for a regulated entity under certain circumstances.  12 U.S.C. § 4617(a).  As conservator, the FHFA immediately succeeds to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity" with respect to the

United States District Court
For the Northern District of California

14

entity and its assets.  12 U.S.C. § 4617(b)(2)(A).  The FHFA may take over assets and operate the entity subject to its conservatorship, collect all obligations and money due, perform all functions of the regulated entity in its name consistent with the FHFA's appointment as conservator, and preserve and conserve the entity's assets and property.  12 U.S.C. § 4617(b)(2)(B)(i)-(iv).

Section 4617(f) limits judicial review of such actions, stating that "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver."  12 U.S.C. § 4617(f).  There is little case law interpreting Section 4617(f).  However, the parties recognize that the language in the provision is similar to 12 U.S.C. § 1821(j), which limits judicial review of actions taken by the Federal Deposition Insurance Corporation (FDIC) in its capacity as a conservator or receiver.  Sahni v. American Diversified Partners, 83 F.3d 1054, 1058-59 (9th Cir. 1996).  That provision states that "no court may take any action," except at the request of the FDIC Board of Directors by regulation or order, "to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."  12 U.S.C. § 1821(j).

The Ninth Circuit has stated, "The bar imposed by § 1821(j) does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as a receiver." Sharpe v. FDIC, 126 F.3d 1147, 1155 (9th Cir. 1997) (citing

United States District Court
For the Northern District of California

National Trust for Historic Preservation v. FDIC, 995 F.2d 238, 240 (D.C. Cir. 1993), judgment vacated, 5 F.3d 567 (D.C. Cir. 1993), reinstated in relevant part, 21 F.3d 469 (D.C. Cir. 1994)). In Sharpe, the Ninth Circuit held that the FDIC, in breaching a contract, did not act within its statutorily defined receiver powers to disaffirm or repudiate contracts; the court was permitted to review the plaintiffs' breach of contract claim against the FDIC.

The FHFA contends that it issued its July 2010 statement and February 2011 letter as conservator of the Enterprises. Plaintiffs respond that Defendants' actions amount to substantive rule-making, and that rule-making is not a part of the FHFA's role as conservator. The FHFA has directed Fannie Mae and Freddie Mac prospectively to refrain from purchasing any mortgage loan secured by property with an outstanding PACE obligation. This appears to amount to substantive rule-making.

Distinct from the FHFA's powers as a conservator or receiver, it has supervisory and regulatory authority over Fannie Mae, Freddie Mac and the Federal Home Loan Banks, the regulated entities. See 12 U.S.C. § 4511(b); § 4513b; § 4513(a)(1)(A), (B)(i)-(v).

Therefore, the Court must next consider whether the FHFA's rule-making is pursuant to its authority as a conservator, or to its supervisory or regulatory authority. The Ninth Circuit has explained that, "in interpreting a statute, the court will not

16

look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law." Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1219 (9th Cir. 1987) (internal quotation marks omitted).  In Morrison-Knudsen, the Ninth Circuit declined to hold that the Federal Savings and Loan Insurance Corporation's authority to adjudicate creditor claims was in keeping with the ordinary functions of a receiver.  Id. at 1217.  The Ninth Circuit found that the language in the relevant statute failed to enumerate, and the statutory scheme did not support, the power to adjudicate creditor claims.  Id. at 1218-20.

Here, it is clear from the statutory scheme overall and other provisions of section 4617 that Congress distinguished between the FHFA's powers as a conservator and its authority as a regulator, and did not intend that the former would subsume the latter.

Specific provisions of section 4617 include the phrase, "The agency may, as conservator . . .," in reference to the FHFA's authority in that role, while other provisions addressing the FHFA's regulatory powers do not contain analogous language. Compare 12 U.S.C. § 4617(b)(1) and (2)(C) with § 4617(b)(2)(A),

**United States District Court**
For the Northern District of California

(B), (G), (H), (I)(i)(I) and (J)[4] and § 4617(b)(4).  Section

4617(b) indicates that Congress intended to enumerate the FHFA's

powers and duties as a conservator, while delegating other duties

to the FHFA's regulatory authority.  The statute does not identify

substantive rulemaking as a conservatorship power.

The cases upon which Defendants rely to assert that the

FHFA's powers as a conservator are "sweeping" and "broad," such

that its July 2010 statement and February 2011 letter escape

judicial review, are inapposite.  The cases address FHFA actions

typical of the ordinary day-to-day functions of an agency acting

as conservator or receiver.  See e.g., Freeman v. FDIC, 56 F.3d

1394 (D.C. Cir. 1995) (holding that, pursuant to 12 U.S.C.

§ 1821(j), the court was precluded from taking any action that

might restrain the FDIC from conducting a nonjudicial foreclosure

sale of assets acquired from a failed bank); National Trust, 995

F.2d at 239-41 (holding that a lawsuit to enjoin the FDIC's sale

to liquidate assets was precluded by § 1821(j)); Hindes v. FDIC,

137 F.3d 148, 160 (3rd Cir. 1998) (precluding an order voiding

FDIC action in its corporate capacity, which triggered a state

agency to close a bank and appoint the FDIC as receiver);

Telematics International, Inc. v. NEMLC Leasing Corp., 967 F.2d

---

    [4] Although section 4617(b)(2)(J) is worded as a broad,
catchall provision, given the overall scheme of section 4617, it
would be incorrect to find that section 4617(b)(2)(J) authorizes
the FHFA to do anything and everything, including engaging in
rule-making, as a conservator.

703, 707 (1st Cir. 1992) (precluding plaintiff from attaching a certificate of deposit held by a bank because the attachment would impede the FDIC from attaching the asset); Save Our Wetlands, Inc. v. State of La., Landmark Lands Co., 1996 WL 194924, *2-3 (E.D. La.) (stating that disposition of a failed institution's assets is a power of a receiver, and a challenge to title of a property directly affects the receiver's function); Pyramid Const. Co., Inc. v. Wind River Petroleum, Inc., 866 F. Supp. 513, 518-19 (D. Utah 1994) (precluding an order to rescind the Resolution Trust Corporation's sale of a parcel and force transfer of that parcel from one private party to another); Furgatch v. Resolution Trust Corp., 1993 WL 149084, *2 (N.D. Cal.) (precluding injunction against a bank and trustee to prevent a foreclosure sale because it would indirectly enjoin a foreclosure by the RTC in its role as conservator).

    Substantive rule-making is not appropriately deemed action pursuant to the FHFA's conservatorship authority.  The FHFA's policy-making with respect to PACE programs does not involve succeeding to the rights or powers of the Enterprises, taking over their assets, collecting money due or operating their business. Given the presumption in favor of judicial review, section 4617(f) does not preclude review of the July 2010 statement and February 2011 letter.

United States District Court
For the Northern District of California

2.   Section 4623(d)

The FHFA argues that its July 2010 statement was exempt from judicial review pursuant to 12 U.S.C. § 4623(d), which restricts judicial review of any action taken under section 4616(b)(4).[5] Section 4616(b)(1) through (4) describes supervisory actions that the FHFA Director may take with respect to "significantly undercapitalized" regulated entities.  Section 4616(b)(4) authorizes the Director to require a "significantly undercapitalized" regulated entity "to terminate, reduce, or modify any activity that the Director determines creates excessive risk to the regulated entity."  The Safety and Soundness Act establishes a tiered system of classification of the capitalization of the regulated entities; "significantly undercapitalized" is the second lowest of the four tiers.  See 12 U.S.C. § 4614(a) and (b)(1)(C).

It is not clear that the FHFA acted pursuant to section 4616(b)(4) because it could have done so only if it found that

---

[5] Defendants assert that Title 12 U.S.C. sections 4623(d) and section 4635(b) preclude judicial review of the July 2010 statement, as alternative arguments to their contention that section 4617(f) bars review.  The FHFA issued its February 2011 letter after the parties completed briefing on Defendants' motions to dismiss, and the Court permitted supplemental briefing to address the February 2011 letter.  Defendants did not argue that 12 U.S.C. §§ 4635(b) and 4623(d) also apply to the February 2011 letter.  They took the position that section 4617(f) precluded review of the February 2011 letter because it was issued expressly in the FHFA's capacity as conservator of Fannie Mae and Freddie Mac.  Docket No. 105 and 107.  Accordingly, the Court does not address 12 U.S.C. §§ 4635(b) or 4623(d) with respect to the February 2011 letter.

Fannie Mae, Freddie Mac and the Federal Home Loan Banks were significantly undercapitalized.  Defendants have not shown that the FHFA imposed such a classification.  Because a regulated entity may be placed into FHFA conservatorship on grounds apart from its capital classification, it is not possible to infer from Fannie Mae or Freddie Mac's conservatorship that they were classified as significantly undercapitalized.  Nothing in the July 2010 statement refers to section 4616(b)(4), or makes reference to undercapitalization.  Thus, section 4623(d) does not limit the Court's jurisdiction to hear Plaintiffs' claims.

3. Section 4635(b)

The FHFA contends that it issued its July 2010 statement pursuant to its enforcement authority[6] and, thus, under 12 U.S.C. § 4635(b), the action is beyond the Court's purview.  Section 4635(b) bars judicial review of the "issuance or enforcement of any notice or order" under 12 U.S.C. § 4624(b) and (c).  Sections 4624(b) and (c) authorize the FHFA to issue orders to "make temporary adjustments to the established standards for an enterprise or both enterprises" and to "require an enterprise, under such terms and conditions as the Director determines to be appropriate, to dispose of or acquire any asset . . ."  12 U.S.C. § 4624(b)-(c).

---

[6] Again, Defendants do not appear to argue that the February 2011 letter was issued under this authority.

**United States District Court**
For the Northern District of California

Neither sections 4624(b) nor (c) applies to the July 2010 statement.  The statement was directed to the regulated entities, not solely the Enterprises.  The statement does not refer to section 4624(b) or any established standard that the FHFA sought to adjust.  Defendants now assert that the relevant standard that the FHFA sought to modify is set forth in 12 C.F.R. § 1252.1, a regulation mandating the Enterprises to comply with the portfolio holdings criteria established in their respective Senior Preferred Stock Purchase Agreements with the Department of Treasury.  However, the July 2010 statement did not adjust the Stock Purchase Agreements; those agreements simply addressed the amount of mortgage assets that the Enterprises must hold in their portfolios.  Finally, section 4624(c) does not avail Defendants because the July 2010 statement did not order the acquisition or disposal of assets.  Thus, if anything, the statement appears to fall under the authority of section 4624(a), which provides that the FHFA Director "shall, by regulation, establish criteria governing the portfolio holdings of the enterprises . . ."  This would seem to support Plaintiffs' argument that the FHFA's action amounted to substantive rule-making.

Accordingly, 12 U.S.C. § 4635(b) does not restrict this Court's jurisdiction over Plaintiffs' claims.

In sum, none of the three statutory provisions upon which Defendants rely--12 U.S.C. § 4617(f), 12 U.S.C. § 4623(d) or 12

U.S.C. § 4635(b)--applies to the FHFA's policy on PACE financing. Plaintiffs' actions are not precluded on these grounds.

II. Motion to Dismiss for Failure to State a Claim

A. Administrative Procedures Act

Plaintiffs allege that the FHFA's policy statements[7] on PACE obligations failed to comply with the notice and comment requirements of, and was arbitrary and capricious in violation of, the APA, 5 U.S.C. §§ 553, 706(2)(D).

1. Judicial review under the APA

To invoke judicial review of agency action under the APA, Plaintiffs must demonstrate prudential standing.  This standing requirement is distinct from Article III standing, in that it is a "purely statutory inquiry" to determine "whether a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit." City of Sausalito v. O'Neil, 386 F.3d 1186, 1199 (9th Cir. 2004).  "For a plaintiff to have prudential standing under the APA, 'the interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulated by the statute . . . in question.'" Nat'l Credit Union Admin. v. First National Bank & Trust Co., 522 U.S. 479, 488 (1998) (alteration in original).  The

_____

[7] Plaintiffs assert that the February 2011 letter, as well as the July 2010 statement, are unlawful under the APA; Defendants' supplemental briefing did not address the APA issues as they relate to the February 2011 letter.  The Court assumes that the APA analysis of the July 2010 statement applies equally to the February 2011 letter.

test requires that "we first discern the interest 'arguably . . . to be protected' by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action in question are among them." Id. at 492.  To satisfy the zone of interest test, "there does not have to be an 'indication of congressional purpose to benefit the would-be plaintiff.'"  Id. A plaintiff is outside a provision's zone of interest where "the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Clarke v. Securities Industry Ass'n, 479 U.S. 388, 399 (1987). The test is not "especially demanding."  Id. at 399.

     With regard to the first factor in the zone of interest test, the parties agree that the paramount goal of the Safety and Soundness Act is to protect the stability and ongoing operation of the residential mortgage market.

     California and the municipalities are arguably within the Safety and Soundness Act's zone of interests because the housing mortgage market operates alongside a system of laws and assessments that California and the municipalities have erected. Although Congress has not expressed a specific purpose to benefit state and local governments through the Safety and Soundness Act, California and the municipalities' interests are affected by the Act and are consistent with its purposes.  The governmental Plaintiffs share an interest in a safe and sustainable secondary

mortgage market and suffer as a result of a faltering mortgage market.  Defendants' actions, pursuant to the Act, have allegedly reversed the longstanding treatment of local assessments in mortgage lending, thwarted California and the municipalities' PACE programs, and curtailed access to mortgages for residents who participate in the programs.  Although there is a potential for disruption inherent in allowing every party adversely affected by Defendants' actions to seek judicial review, California and the municipalities are well-positioned to represent the public interest reliably without undermining the Act's objectives.  See Clarke, 479 U.S. at 397 n.12 (stating that the ability of a plaintiff to serve as a "reliable private attorney general" is relevant to the zone of interest test.)

The Sierra Club, however, bears a significantly less direct relationship to the mortgage market.  The environmental interests the Sierra Club asserts, even taking account of the Act's public interest provision, are too attenuated from the Act's central purpose to find prudential standing under the APA for the organization on that basis.

Defendants also argue that Plaintiffs have failed to allege a final agency action.  Under the APA, judicial review is only permissible for final agency action.  5 U.S.C. § 704.  "For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from

which legal consequences will flow.'"  Oregon Natural Desert Ass'n v. United States Forest Service, 465 F.3d 977 (9th Cir. 2006).  To determine whether the consummation prong of the test has been satisfied, the court must make a pragmatic consideration of the effect of the action, not its label.  Id. at 982, 985.  The finality requirement is satisfied when an agency action imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process.  Id. at 986-87.  "An agency action may be final if it has a 'direct and immediate . . . effect on the day-to-day business' of the subject party."  Id. at 987 (alteration in original).

     The FHFA presented its July 2010 statement as the consummation of a decision-making process that involved "careful review" and "over a year of working with federal and state government agencies."  FAC, Ex. A, at 10.  The statement was designed to "pause" PACE programs nation-wide.  See id.  The day the statement was issued, the FHFA's counsel sent it to the California Attorney General.  The statement had a legal effect because it immediately imposed on the regulated entities obligations to take certain prudential actions.  Fannie Mae and Freddie Mac promptly responded on August 31, 2010, publishing announcements to industry lenders that they would no longer purchase mortgage loans originated on or after July 6, 2010, secured by properties with an outstanding PACE obligation.  The Act authorizes the FHFA Director to take enforcement action

United States District Court
For the Northern District of California

against regulated entities to police their lawful operation. <u>See</u> <u>e.g.</u>, 12 U.S.C. § 4631(a)(1).  Thus, the present case is distinguishable from <u>Fairbanks North Star Borough v. Army Corps of</u> <u>Engineers</u>, 543 F.3d 586, 593-97 (2008), and <u>Hindes</u>, 137 F.3d at 162-63.  The July 2010 statement indicated the FHFA's final stance on PACE obligations, and the February 2011 letter reiterated that policy, thus demonstrating a final agency action by the FHFA subject to review under the APA.

　　　　　　2. Notice and comment requirement

　　　　Title 12 U.S.C. § 4526(b) provides that any regulations issued by the FHFA Director pursuant to the agency's general regulatory authority shall comply with the APA's requirements for notice and comment.  "Interpretative rules," however, are exempt from the APA's notice and comment requirements.  5 U.S.C. § 553(b)(3)(A).  This exemption is narrowly construed.  <u>Flagstaff</u> <u>Medical Center, Inc. v. Sullivan</u>, 962 F.2d 879, 885 (9th Cir. 1992).  Likewise, the notice and comment requirements are not imposed on orders that result from an agency adjudication.  <u>Yesler</u> <u>Terrace Community Council v. Cisneros</u>, 37 F.3d 442, 448 (9th Cir. 1994).

　　　　An interpretive rule is one "'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'"  <u>Erringer v. Thompson</u>, 371 F.3d 625, 630 (9th Cir. 2004) (citing <u>Shalala v. Guernsey Mem'l Hosp.</u>, 514 U.S. 87, 88 (1995)).  "Because they generally clarify the application

of a law in a specific situation, they are used more for discretionary fine-tuning than for general law making." Flagstaff, 962 F.2d at 886.  On the other hand, substantive rules, sometimes referred to as legislative rules, "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress."  Erringer, 371 F.3d at 630. "There is no bright-line distinction between interpretative and substantive rules."  Flagstaff, 962 F.2d at 886.  A court need not accept an agency's characterization of its rule at face value. Hemp Industries Ass'n v. DEA, 333 F.3d 1082, 1087 (9th Cir. 2003).

That the FHFA's policy amounted to substantive rulemaking is supported by the FHFA's handling of another issue: Guidance it recently proposed to issue with respect to private transfer fee covenants.  On August 16, 2010, the FHFA published a notice and request for comments in the Federal Register concerning the proposed Guidance that the regulated entities "should not deal in mortgages on properties encumbered by private transfer fee covenants" because "[s]uch covenants appear adverse to liquidity, affordability and stability in the housing finance market and to financially safe and sound investments."  75 Fed. Reg. 49932 (Aug. 16, 2010).  In this analogous instance, the FHFA apparently deemed it appropriate to comply with the APA notice and comment requirements.

**United States District Court**
For the Northern District of California

The Court finds that the FHFA's policy on PACE obligations amounts to substantive-rulemaking, not interpretive rule-making that would be exempt from the notice and comment requirement.

Defendants also argue that the APA's notice and comment requirements do not apply because the July 2010 statement was an order resulting from an adjudication.  <u>Yesler</u> explains that "adjudications resolve disputes among specific individuals in specific cases [and] . . . have an immediate effect on specific individuals (those involved in the dispute)."  37 F.3d at 448 (parenthetical in original).  "Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied."  <u>Id.</u>  The FHFA's policy does not refer to a specific homeowner seeking a mortgage, or to a group of PACE participants.  It is a prospective, generally applicable directive.  Accordingly, it would be inappropriate to apply the adjudication exemption from the APA's notice and comment requirements to the actions of which Plaintiffs complain.

> 3. Arbitrary and capricious action--discretionary act exemption

In addition to their procedural claim under the APA, Plaintiffs allege a substantive claim that the FHFA's policy is arbitrary and capricious.  Under the APA, a claim for arbitrary and capricious action is exempt from judicial review when the challenged action is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  In the Ninth Circuit there are two

circumstances in which judicial review is foreclosed by
§ 701(a)(2).

> The first of these of circumstances is that in which a
> court would have no meaningful standard against which
> to judge the agency's exercise of discretion and there
> thus is no law to apply.  The second such circumstance
> is that in which the agency's action requires a
> complicated balancing of a number of factors which are
> peculiarly within [the agency's] expertise, including
> the prioritization of agency resources, likelihood of
> success in fulfilling the agency's statutory mandate,
> and compatibility with the agency's overall policies.

Newman v. Apfel, 223 F.3d 937, 943 (9th Cir. 2000)(internal

quotation marks and citations omitted, alteration in original).

     In section 4526(b), the Safety and Soundness Act expressly

adopts the requirements of the APA with respect to its regulatory

actions, giving rise to a presumption of judicial oversight.  12

U.S.C. § 4526(b).  See Newman, 223 F.3d at 943 ("[T]he APA

embodies a 'basic presumption of judicial review.'").  That the

FHFA has "wide discretion" does not establish that it may justify

its choices on "specious grounds."  Id.  The Ninth Circuit has

"emphasized that § 701(a)(2) stakes out 'a very narrow

exception.'"  Id. (citing Citizens to Preserve Overton Park v.

Volpe, 401 U.S. 402, 410 (1971)).

     In Newman, the Ninth Circuit approved judicial review of

Social Security regulations defining the statutory terms,

"reliable" and "currently available" information.  223 F.3d at

943.  When certain information was deemed reliable and currently

available, pursuant to the regulation, a different method of

30

calculating Supplemental Security Income benefits would apply. Id. at 939.  The plaintiff claimed that the regulation's definitions of the terms "reliable" and "currently available" were arbitrary and capricious.  The Ninth Circuit agreed, after holding that the claim was subject to judicial review.  The court reasoned that the definition and application of the two statutory terms, and of the terms "arbitrary" and "capricious," did not defy "meaningful review" or involve a complicated balancing of a number of factors "peculiarly within the agency's expertise."  Id. at 943.

The same reasoning applies to the present case.  Plaintiffs' claims would require the Court to determine whether the FHFA's decision to treat debt obligations arising from PACE programs as assessments, rather than loans, was arbitrary and capricious. Under this limited review, the claims do not oblige the Court to evaluate whether the FHFA arrived at the correct conclusion, as a matter of policy.

The FHFA action challenged here is unlike the agency actions disputed in cases in which courts have found review precluded. See e.g., Lincoln v. Vigil, 508 U.S. 182 (1993) (agency's allocation of a lump-sum appropriation); Heckler v. Chaney, 470 U.S. 821, 831 (agency's decision not to institute enforcement proceedings); Center for Policy Analysis on Trade and Health v. Office of the United States Trade Representative, 540 F.3d 940, 947 (9th Cir. 2008) (political question regarding committee

membership).  The FHFA's obligation to consider the impact of the
PACE programs in a manner that is not arbitrary or capricious does
not involve a complicated political calculus or the balancing of
multiple factors so peculiarly within the agency's expertise that
judicial review is unwarranted.

In sum, the FHFA's July 2010 statement and February 2011
letter are not insulated from judicial review for arbitrariness by
the discretionary act exemption.

B. NEPA Claims

California, Sonoma County, Palm Desert and the Sierra Club
assert claims for violation of the NEPA based on the FHFA's
failure to consider the environmental impact of its actions.[8]
Defendants move to dismiss the NEPA causes of action for failure
to state a claim.

The NEPA requires federal agencies to prepare a detailed
Environmental Impact Statement (EIS) for all "major Federal
actions significantly affecting the quality of the human
environment."  42 U.S.C. § 4332(2)(C); Ka Makani 'O Kohala Ohana,
Inc. v. Water Supply, 295 F.3d 955, 959 (9th Cir. 2002).  In the
alternative, an agency may prepare a more limited environmental
assessment (EA) concluding in a "Finding of No Significant

_____

[8] The parties' supplemental briefing did not address the NEPA
issues with regard to the February 2011 letter, which reaffirmed
the FHFA's July 2010 statement.  The Court's NEPA analysis of the
July 2010 statement applies equally to the February 2011 letter.

United States District Court
For the Northern District of California

Impact."   San Luis Obispo Mothers for Peace v. Nuclear Regulatory Com'n., 449 F.3d 1016, 1020 (9th Cir. 2006).

"Because NEPA does not contain a separate provision for judicial review, we review an agency's compliance with NEPA under the Administrative Procedure Act . . ." Ka Makani, 295 F.3d at 959.  This Court earlier held that Plaintiffs, other than the Sierra Club, satisfied the zone of interest test under the APA with respect to the Safety and Soundness Act.  The Court must now consider whether Plaintiffs are within the zone of interest sought to be protected by the NEPA.  See Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 939 (9th Cir. 2005).

"NEPA's purpose is to protect the environment." Citizens for Better Forestry, 341 F.3d at 976.  The statute's "twin aims" are to place upon a federal agency "the obligation to consider every significant aspect of the environmental impact of a proposed action" and "ensure that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." Baltimore Gas and Elec. Co. v. Natural Resource Defense Council, Inc., 462 U.S. 87, 97 (1983).  All Plaintiffs in the present actions asserting NEPA claims, including the Sierra Club, plainly seek to protect the environment and, as a result, the zone of interest requirement is satisfied.

Defendants next contend that the adoption of the FHFA's PACE policy was not a major federal action significantly altering the quality of the human environment because Plaintiffs' alleged

33

United States District Court
For the Northern District of California

environmental injury is not "fairly traceable" to the policy.
However, in making this argument Defendants incorrectly rely on
Lujan's discussion of Article III standing, 504 U.S. at 561,
rather than authority addressing prudential standing under the
APA.  Plaintiffs have adequately alleged that the FHFA's policy
has decimated PACE programs and significantly impacted the
environment by depriving California and its citizens of
opportunities to improve water and energy conservation.

Nor does Northcoast Environmental Center v. Glickman, 136
F.3d 660 (9th Cir. 1998), demonstrate that Plaintiffs have failed
to satisfy the "major federal action" requirement.  Northcoast
presented a challenge to an inter-agency program that involved
activities that did not have an "actual or immediately threatened
effect," because they implicated setting guidelines and goals for
research, management strategies and information sharing, rather
than specific activities with a direct impact.  Id. at 669-70.
Here, however, Plaintiffs do not challenge such a broad program
involving activities preliminary to discrete agency action.

Relying on National Wildlife Federation v. Espy, 45 F.3d
1337, 1343 (9th Cir. 1995), Defendants also argue that the FHFA's
adoption of its PACE policy was not a major federal action because
it did not alter an environmental status quo, as required to
trigger obligations under the NEPA.  Defendants' reliance on
National Wildlife Federation is unavailing.  In that case, the
court found that the contested agency action did not alter the

34

environmental status quo because the grazing of a certain wetland parcel was occurring before the agency transferred the parcel and the transfer would simply allow a continuation of the grazing. Id. at 1343-44.  Here Plaintiffs allege that the FHFA's policy changed the status quo by thwarting financing for PACE-encumbered properties, thus curtailing energy conservation efforts that were ongoing beforehand.  The policy, by the terms of the July 2010 statement, aimed to place PACE programs on "pause," and changed the status quo by blocking these emerging environmental conservation efforts, through the direction of marketplace practices.

For purposes of this motion, Plaintiffs sufficiently allege that the FHFA's policy entailed a major federal action under the NEPA.

Finally, Defendants contend that environmental review would serve no purpose because the FHFA is statutorily precluded from altering its safety and soundness determinations based on environmental concerns.  The NEPA gives way when a competing statute creates an "irreconcilable and fundamental conflict." Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma, 426 U.S. 776, 788 (1976).

The FHFA's dual obligations to ensure that the regulated entities operate safely and soundly and in the public interest do not indicate that the agency's consideration of the environmental impact resulting from its actions with regard to the PACE programs

is precluded.  Notably, the NEPA does not mandate results, but simply requires a process by which the agency considers environmental impact and informs the public of its decision-making process.

Defendants argue that the FHFA was required to act without regard to environmental concerns due to the national housing crisis.  The FHFA, however, admittedly engaged in a year-long review, consulting with various stakeholders.  Thus, Defendants cannot be heard to argue that the urgency of the crisis and the FHFA's statutory duties created an insurmountable conflict with NEPA's requirements.  Cf., Flint Ridge, 426 U.S. at 791 (finding an irreconcilable conflict because the relevant statute required a time frame that did not permit NEPA compliance).

Department of Transportation v. Public Citizen is not on point.  There the Supreme Court found that an agency's EIS was not required to include the environmental impact of Mexican motor carriers entering the United States because the agency had no authority to prevent the carriers from cross-border operations.  541 U.S. 752, 767 (2004).  Here, however, there is no categorical bar to the FHFA's authority to consider environmental impacts.  Grand Council of the Crees v. Federal Energy Regulatory Commission, 198 F.3d 950 (D.C. Cir. 2000), is inapposite because it did not address the Safety and Soundness Act.

Because Plaintiffs have satisfied the zone of interest test and alleged a major federal action that has altered the

**United States District Court**
For the Northern District of California

1  environmental status quo, and because environmental considerations

2  are not precluded by the Safety and Soundness Act, Plaintiffs have

3  stated cognizable claims for violation of the NEPA.

4      C. Tenth Amendment Commerce Clause

5      Placer County claims that the FHFA violated the

6  Constitution's Tenth Amendment Commerce Clause by interfering with

7  the county's taxation and assessment powers.  Even if the FHFA

8  interfered with Placer County's authority, the FHFA's actions are

9  not barred by the federal Commerce Clause.  It is well established

10  that Congress may impede a State's power to tax, where the

11  enactment is a proper exercise of its constitutional authority.

12  McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 436 (1819).  In a

13  recent case affirming a dismissal of a Tenth Amendment challenge

14  to a federal banking regulation, the Supreme Court stated,

15  "Regulation of national banking operations is a prerogative of

16  Congress under the Commerce and Necessary and Proper Clauses."

17  Watters v. Wachovia Bank, N.A., 550 U.S. 1, 22 (2007).  Placer

18  County's response that state and local laws authorizing PACE

19  programs do not attempt to regulate banks is unavailing because

20  its Tenth Amendment claim challenges the FHFA's action pursuant to

21  the Safety and Soundness Act.

22      Furthermore, Placer County concedes that its claim does not

23  arise from a theory that a federal program commandeered the

24  legislative process of the States by directly compelling them to

25  enact and enforce a federal regulatory program.  Yet it cites no

37

authority for the proposition that a federal agency's action that indirectly interferes with a state or local sovereign's assessment powers may form the basis for a Tenth Amendment claim. Accordingly, Placer County's Tenth Amendment claim is dismissed. Leave to amend is not warranted because Placer County's theory is not cognizable.

D. Spending Clause

Where Congress grants money pursuant to its powers under the Constitution's Spending Clause, any conditions imposed on receipt of the funds must be unambiguously authorized by Congress. Pennhurst State School and Hosp. v. Halderman, 451 U.S. 1, 17 (1981). Placer County alleges that the FHFA violated the Spending Clause by placing conditions on PACE programs without clear authorization from Congress to do so. Defendants, however, correctly point out that the FHFA's policy does not impose any terms, let alone ambiguous requirements, for States and counties to receive federal funds to support their PACE programs. Rather, the policy directed the regulated entities to undertake "prudential actions" with respect to the programs. A requirement that makes a program more costly or difficult to operate, without imposing a substantive condition not clearly required by Congress, does not give rise to a Spending Clause violation. See Winkelman ex rel. Winkelman v. Parma City School Dist., 550 U.S. 516, 533-34 (2007). Therefore, Placer County's Spending Clause claim is dismissed without leave to amend.

United States District Court
For the Northern District of California

E. Claim for Declaratory Relief

Plaintiffs seek declaratory relief in the form of an order stating that, under California law, debt obligations created by their PACE programs are assessments, not loans.  The Court will resolve the asserted substantive claims, but a claim for declaratory relief is not a means for a party independently to seek court interpretations of legal terms.  Plaintiffs' claim for declaratory relief is dismissed without leave to amend.

III. State Law Claims

Plaintiffs' state law claims are subject to dismissal due to various deficiencies in their allegations that Defendants point out.  However, because the claims are clearly preempted by federal law, the Court dismisses them without leave to amend for that reason.  Federal preemption arises under the Supremacy Clause of the United States Constitution and applies in the following three circumstances:

> First, Congress may state its intent through an
> express preemption statutory provision.  Second, in
> the absence of explicit statutory language, state law
> is preempted where it regulates conduct in a field
> that Congress intended the Federal Government to
> occupy exclusively . . . Finally, state law that
> actually conflicts with federal law is preempted.

Kroske v. U.S. Bank Corp., 432 F.3d 976, 981 (9th Cir. 2005) (citing English v. General Elec. Co., 496 U.S. 72, 78-79 (1990)).

In general, there is a presumption against federal preemption.  See id.  Here, the presumption against federal preemption does not apply because there is a history of a

United States District Court
For the Northern District of California

significant federal presence in the area of regulating the safety and soundness of the Enterprises.  See Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).  Federal preemption based on an actual conflict arises "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress." English, 496 U.S. at 79 (internal citations removed).  Congress has established the FHFA to serve as the primary regulatory authority supervising the Enterprises and the Federal Home Loan Banks.  Exposure to state law claims would undermine the FHFA's ability to establish uniform and consistent standards for the regulated entities, and thwart its mandate to assure their safe and sound operation.  If Plaintiffs' state claims were not preempted, liability based on these claims would create obstacles to the accomplishment of the policy goals set forth in the Safety and Soundness Act.

Plaintiffs argue, in the alternative, that a ruling on the federal preemption defense is premature.  They suggest that the FHFA must make a factual showing that PACE-encumbered mortgages pose an actual obstacle to the purpose and goals of the Safety and Soundness Act.  Plaintiffs do not cite any authority for requiring such a showing, and it would defeat the purpose of conflict preemption, which is to preserve the supremacy of federal law in an area that Congress intended to occupy.  See Fidelity Federal

Savings and Loans Ass'n. v. de la Cuesta, 458 U.S. 141, 169-70
(1982). Accordingly, preemption does not depend on such a
showing.

Plaintiffs' state law claims are preempted by federal law and
are dismissed without leave to amend.

IV. Preliminary Injunction

Sonoma County has moved for a preliminary injunction, which
California has supported as amicus curiae. Sonoma County requests
that the status quo be restored by setting aside Defendants'
policies regarding PACE debt obligations. At the Court's request,
the parties filed supplemental briefing on the balance of
hardships that might result from a narrower injunction directing
the FHFA merely to initiate the notice and comment process,
without changing its current policies.

"A plaintiff seeking a preliminary injunction must establish
that he is likely to succeed on the merits, that he is likely to
suffer irreparable harm in the absence of preliminary relief, that
the balance of equities tips in his favor, and that an injunction
is in the public interest." Winter v. Natural Res. Def. Council,
Inc., 555 U.S. 7, 19 (2008). Alternatively, "a preliminary
injunction could issue where the likelihood of success is such
that serious questions going to the merits were raised and the
balance of hardships tips sharply in plaintiff's favor," so long
as the plaintiff demonstrates irreparable harm and shows that the
injunction is in the public interest. Alliance for the Wild

41

<u>Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation and editing marks omitted).  The court may employ a sliding scale when considering a plaintiff's likelihood of success on the merits and the likelihood of irreparable harm. <u>Id.</u>  "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  <u>Id.</u>

Sonoma County has not demonstrated a likelihood that it will prevail on the merits to obtain the sweeping relief it initially requested.  Nor does the balance of hardships tip sharply in its favor with regard to that relief.  However, Sonoma County has established a likelihood that it will succeed in its efforts to require the FHFA to comply with the APA's notice and comment requirements.  The balance of hardships tips sharply towards Sonoma County in that the FHFA has failed to mention any prejudice that would result if it were to proceed with the notice and comment process, as long as it was not required to change its policy in the meantime.  Thus, the Court GRANTS Sonoma County's motion for a preliminary injunction requiring the FHFA, without changing its current policy, to proceed with the notice and comment process relating to its policy on PACE-related debts.

CONCLUSION

Plaintiffs have Article III standing, and the provisions of the Safety and Soundness Act do not preclude judicial review of Plaintiffs' claims.  Plaintiffs, except for the Sierra Club, may

pursue their claims for violations of the APA.  The Sierra Club's
APA claims are dismissed without leave to amend.  Plaintiffs have
satisfied the requirements necessary to pursue claims for
violation of the NEPA.  Placer County's claims under the Tenth
Amendment and the Spending Clause and Plaintiffs' claims for
declaratory relief are dismissed without leave to amend.
Plaintiffs' state law claims are preempted by federal law and are
dismissed without leave to amend.  Thus, Defendants' motions to
dismiss are GRANTED IN PART AND DENIED IN PART.  C 10-03084,
Docket No. 49; C 10-03270, Docket Nos. 41 and 74; C 10-03317,
Docket No. 18; C 10-04482, Docket No. 13.

Sonoma County's motion for a preliminary injunction is
GRANTED IN PART.  C 10-03270, Docket No. 33.  The Court will, by a
separate order, require the FHFA, without withdrawing its July
2010 statement or its February 2011 letter, to proceed with the
notice and comment process with regard to those directives.  The
County shall submit a proposed form of order after submitting it
to Defendants for approval as to form.

IT IS SO ORDERED.

Dated: August 26, 2011

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California